| | |
|---|---|
| Sierra SUTTON, | 1:19-cv-7395-NLH-JS |
| Plaintiff, | **OPINION** |
| v. | |
| Thomas M. LYLES, JR., et al., | |
| Defendants. | |

**APPEARANCES:**
MARK J. MOLZ
1400 ROUTE 38 EAST
P.O. BOX 577
HAINESPORT, NEW JERSEY 08036

   *On behalf of Plaintiff*

M. ELIZABETH DUFFY
KRIMSER, LAMASTRA, CUNNINGHAM & SKINNER
202A HALL'S MILL ROAD
P.O.BOX 1675
WHITEHOUSE STATION, NEW JERSEY 08889

   *On behalf of Defendants*

**HILLMAN**, District Judge,

This matter comes before the Court on the Motion to Dismiss and Compel Arbitration brought by Defendants Thomas M. Lyles, Jr. and Aspen Hills Health Care Center (collectively "the moving Defendants"). [Docket No. 12.] Based on the below analysis, the Court will grant Defendants' motion.

**BACKGROUND**

This case stems from allegations that Mr. Lyles sexually harassed Plaintiff Sierra Sutton while they worked together at Aspen Hills. [Docket No. 1.] On or about September 9, 2016, Ms. Sutton was hired by Aspen Hills to join its housekeeping department. [Docket No. 1-1, ¶ 6.] Aspen Hills has a zero-tolerance policy for sexual harassment in the workplace. [Id. ¶ 7.] Because Aspen Hills' housekeeping office, storage supplies office, break room, and maintenance office were all in the basement of its facility, Ms. Sutton would often be in the basement to restock her housekeeping cart or to go to the break room. [Id. ¶¶ 8-9.] Ms. Sutton alleges that on numerous occasions throughout 2017, during which time she was pregnant, Mr. Lyles touched her inappropriately and in private places without her consent while the two of them were in the basement hallways. [Id. ¶ 10-11.]

Ms. Sutton alleges that she told this information to a coworker and a supervisor, who apparently discussed the issue with Mr. Lyles. [Id. ¶ 12.] Nevertheless, the unwanted and inappropriate sexual touching persisted. [Id.] Ms. Sutton also alleges that she notified Defendant Camille Passalacqua, a coworker and friend of Mr. Lyles, who said that she would report the incident to the corporate office. [Id. ¶ 13.] But Ms.

Sutton claims that Ms. Passalacqua failed to report the incident. [Id. ¶ 14.]

Ms. Sutton alleges that Aspen Hills allowed Mr. Lyles to continue to work in close proximity to her and never addressed her allegations of sexual harassment. [Id. ¶ 15.] Given these circumstances, Ms. Sutton says that she would become so upset that she would go to the bathroom and cry, and that she eventually began to miss work because of her anxiety and fear surrounding Mr. Lyles' presence. [Id. ¶ 16-17.] Finally, Ms. Sutton was separated from her employment with Aspen Hills because of her attendance record. [Id. ¶ 19.]

On January 21, 2019, Ms. Sutton filed the present lawsuit in the Burlington County Superior Court, Law Division. [See generally id.] Her Complaint raises three counts. [Id. ¶¶ 20-40.] Count I is a claim for negligence as against Defendants Lyles, Aspen Hills, Passalacqua, and John Does 1-10, "a fictitious designation for an individual or business entity, agent servant, or assign thereof whose act or omission contributed to the damages sustained by" Ms. Sutton. [Id. ¶¶ 4, 20-24.] Count II is a claim against all Defendants for "Intentional Acts/Omissions." [Id. ¶¶ 25-28.] Count III is a claim against all Defendants for sexual harassment in violation of Title VII of the Federal Civil Rights Act of 1964 ("Title

3

VII") and the New Jersey Law Against Discrimination ("NJLAD"). [Id. ¶¶ 29-40.]

On February 29, 2019, Mr. Lyles and Aspen Hills removed the suit to this Court. [Docket No. 1.] On March 12, 2019, they filed an Answer to the Complaint. [Docket No. 3.] On August 2, 2019, they filed the present Motion to Dismiss and Compel Arbitration. [Docket No. 12.] Ms. Sutton responded in opposition on September 3, 2019. [Docket No. 16.] The moving Defendants filed a timely reply on September 6, 2019. [Docket No. 17.][1]

The basis for the moving Defendants' motion is that Ms. Sutton signed a binding arbitration agreement called the "Mutual Arbitration Agreement" (the "Agreement") when she was hired by Aspen Hills. [Docket No. 12-2, ¶ 4.] The relevant portions of the Agreement read:

> A) In consideration of the Undersigned Employee's ("Employee") employment and the promise of Healthcare Services Group, Inc. and its subsidiaries[2] and affiliates (collectively, "HSG") to arbitrate all categories of disputes that Employee hereby agrees to arbitrate, HSG and Employee (collectively, the "Parties") agree that binding arbitration shall be the

---

[1] The Court notes that the forthcoming analysis applies equally to Defendants Passalacqua and John Does 1-10. Therefore, although those Defendants have not yet entered any appearances in this case, the Court will also dismiss the claims against them in the interest of judicial economy.

[2] It is undisputed that this includes Aspen Hills.

4

exclusive remedy for all covered claims between them. Final and binding arbitration before a single, neutral arbitrator shall be the exclusive remedy for any covered claim. A "covered claim" is any claim now existing or arising in the future (except a claim that by law is non-arbitrable), whether known or unknown at this time, including, but not limited to, such matters arising from, related to or in connection with Employee's employment with HSG or Employee's termination. A covered claim includes, but is not limited to, such matters arising from, related to or in connection with Employee's employment with HSG or Employee's termination. A covered claim includes, but is not limited to, claims under the Fair Labor Standards Act; Title VII of the Civil Rights Act (to the extent permitted by law), or similar or analogous state or local laws; breach of contract; unpaid expenses or wages; unpaid compensation; penalties; missed meal or rest breaks; wrongful termination; unfair competition; or discrimination, harassment or unlawful retaliation. As to any uncovered claim, each party thus waives the right to a jury trial and to a bench trial, and also waives the right to bring, maintain, participate in, or receive money from, any class, collective, or representative proceeding, whether in court, arbitration, or otherwise. Nothing in this Agreement shall prevent the Parties from seeking injunctive relief from any court of competent jurisdiction in aid of arbitration or to maintain the status quo pending arbitration.
. . . .
G) This Agreement is governed by and enforceable under the Federal Arbitration Act.
. . . .
**BY SIGNING BELOW, I KNOWINGLY AND VOLUNTARILY WAIVE THE RIGHT TO CLASS, REPRESENTATIVE, AND COLLECTIVE PROCEDURES, AND THE RIGHT TO TRIAL BY JURY OR JUDGE FOR ANY COVERED CLAIM. . . . I ACKNOWLEDGE THAT I AM HEREBY ADVISED TO SEEK LEGAL ADVICE AS TO MY RIGHTS AND RESPONSIBILITIES UNDER THIS AGREEMENT.**

[Id., ¶ 5.]

Ms. Sutton does not dispute that she signed the Agreement. [See Docket No. 16.] However, she alleges that she has no

5

"recollection of anyone explaining" the Agreement to her. [Id. at 2.] She further alleges that she never received a copy of the JAMS Employment Arbitration Rules & Procedures. [Id.] She claims that she "never intended to waive any rights," and that the Agreement "contains reference to legal concepts [she] did not and could not understand." [Id.] Finally, she asserts that she has "no idea that JAMS Employment Rules and Procedures play into this," she feels that she "was not treated fairly by [Aspen Hills] in connection with" the Agreement, she "never voluntarily agreed to this arbitration and . . . still [does] not," and that she "never voluntarily agreed that any arbitrator could assess the other side's attorney fees against [her]." [Id. at 2.]

Ms. Sutton's sole legal argument against the moving Defendants' motion is that she was never provided with the JAMS Arbitration Rules and Procedures. [Id. at 5.] Ms. Sutton argues that, without those, the Agreement was not understandable to her and "it would be impossible for her to ascertain the impact of her potential waiver of trial by judge or jury." [Id.] Therefore, she ultimately argues, the Agreement is unenforceable. [Id.]

For the reasons expressed below, the Court will grant the moving Defendants' motion.

**DISCUSSION**

**A.  Subject Matter Jurisdiction**

The Court exercises jurisdiction over this case pursuant to 18 U.S.C. § 1331, as this case arises under Title VII, a federal law.  The Court exercises supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367, as the claims arise out of a common nucleus of operative fact.  Finally, this case was properly removed to this Court pursuant to 28 U.S.C. §§ 1441 and 1446.

**B.  Standard for Motion to Compel Arbitration**

When a "the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue," as here, the summary judgment standard applies.  Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 776 (3d Cir. 2013).

Summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any,' . . . demonstrate the absence of a genuine issue of material fact" and that the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (quoting Fed. R. Civ. P. 56).

An issue is "genuine" if it is supported by evidence such

that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."); see Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the

moving party may be discharged by "showing"—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." (quoting Celotex, 477 U.S. at 325)).

Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. A "party opposing summary judgment 'may not rest upon the mere allegations or denials of the . . . pleading[s].'" Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). For "the non-moving party[] to prevail, [that party] must 'make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Cooper v. Sniezek, 418 F. App'x 56, 58 (3d Cir. 2011) (quoting Celotex, 477 U.S. at 322). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 257.

    **C.    Enforceability of Arbitration Agreements**

"It is well established that the Federal Arbitration Act (FAA) reflects a 'strong federal policy in favor of the

resolution of disputes through arbitration.'" Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 160 (3d Cir. 2009) (quoting Alexander v. Anthony Int'l, L.P., 341 F.3d 256, 263 (3d Cir. 2003)). But this preference will only be implemented after the Court determines "that (1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of that agreement." Id. (citing Trippe Mfg. Co. v. Niles Audio Corp, 401 F.3d 529, 532 (3d Cir. 2005)).

In this case, Ms. Sutton does not dispute that the second requirement is satisfied. Nor would she have any basis to, since the Agreement explicitly states that any claims "arising from, related to or in connection with" Ms. Sutton's employment, including claims under Title VII and analogous state law, as well as claims of discrimination or harassment, are covered by the Agreement. [Docket No. 12-2, ¶ 5.]

Thus, the only issue is whether the Agreement is a valid one. Courts "look to applicable state law to determine whether the parties agreed to arbitrate." Ailments Krispy Kernels, Inc. v. Nichols Farms, 851 F.3d 283, 289 (3d Cir. 2017). In New Jersey, "[a]n enforceable agreement requires mutual assent, a meeting of the minds based on a common understanding of the contract terms." Id. (quoting Morgan v. Sanford Brown Inst., 137 A.3d 1168, 1180 (N.J. 2016)). That standard, however, does

not relieve a party from the terms of a contract simply because they did not read or specifically discuss the terms.  Id.  "When a party enters into a signed, written contract, that party is presumed to understand and assent to its terms, unless fraudulent conduct is suspected."  Stelluti v. Casapenn Enters., LLC, 1 A.3d 678, 690 (N.J. 2010).  The mere "[f]ail[ure] to read a contract does not excuse performance unless fraud or misconduct by the other party prevented one from reading."  Gras v. Assocs. First Capital Corp., 786 A.2d 886, 894 (N.J. Super. Ct. App. Div. 2001); see also Henningsen v. Bloomfield Motors, Inc., 161 A.2d 69, 84 (N.J. 1960) (calling same a "general principle" of contract law).

Here, Ms. Sutton signed the Agreement, so the Court must presume that she understood and assented to the terms.  See Stelluti, 1 A.3d at 690.  Her testimony that she did not intend to waive her rights and did not understand the Agreement does not overcome that presumption.  Only evidence of fraud or misconduct could do so.  In trying to meet that standard, Ms. Sutton relied on two New Jersey cases: Kamaratos v. Palias, 821 A.2d 531 (N.J. Super. Ct. App. Div. 2003), and Delaney v. Dickey, Docket No. A-1726-17T4, 2019 WL 3982756 (N.J. Super. Ct. App. Div. Aug. 23, 2019).  She argues that those cases create a requirement that an arbitration agreement will only be binding

11

on a party if the party was provided with the JAMS Arbitration Rules and Procedures. [Docket No. 16, at 4-5.]

The moving Defendants rightfully point out that those two cases are inapposite, and the requirement created by them does not apply to the facts of this case. Both of those cases involved arbitration agreements between attorneys and clients. In Delaney, the Court held that the arbitration clause in question violated the Rules of Professional Conduct, and therefore was unenforceable. Delaney, 2019 WL 3982756, at *1. Similarly, the Court in Kamarotos found that the arbitration clause in question violated the attorney's fiduciary duty to his client, and therefore was unenforceable. Kamarotos, 821 A.2d at 536-37.

Plainly put, the circumstances that were present in Delaney and Kamarotos are not present in this case. The Rules of Professional Conduct do not apply in this situation, nor did the moving Defendants have a fiduciary duty to Ms. Sutton. Therefore, her assertion that the Agreement should be deemed unenforceable because she never received the JAMS Arbitration Rules and Procedure fails. Since that is the only argument that Ms. Sutton raised, and no other basis exists in the record not to enforce the parties written agreement, the moving Defendants' motion will be granted in full. The Agreement is enforceable

and, therefore, the present suit shall be dismissed in favor of arbitration.

## **CONCLUSION**

For the reasons expressed above, the Court will grant the moving Defendants' motion to dismiss Ms. Sutton's claims and to compel arbitration. [Docket No. 12.] The Court will dismiss the suit as against all Defendants. An accompanying Order will be entered.

February 13, 2020  s/Noel L. Hillman
DATE  NOEL L. HILLMAN, U.S.D.J.

13